IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA    RECEIVED

EMMA GIACOMO, by and through her son          *
and next friend, GEORGE ALFORD,               *
                                              *          2008 JAN -8  A 10: 14
                                              *
          Plaintiff,                          *          DEBRA P. HACKETT, CLK
                                              *          U.S. DISTRICT COURT
                                              *          NO. 3:08-CV-19-WKW
vs.                                           *
                                              *
BEVERLY ENTERPRISES-ALABAMA,                  *
INC., et al.,                                 *
                                              *
          Defendants.                         *
                                              *

## DEFENDANT'S MOTION TO COMPEL ARBITRATION
## AND STAY PROCEEDINGS

COMES NOW Defendant Beverly Enterprises-Alabama, Inc. d/b/a Beverly Healthcare-Lanett, (improperly named in Plaintiff's Complaint as Beverly Healthcare Services d/b/a Beverly Enterprises-Alabama, Inc.), by and through the undersigned counsel of record, and moves this Honorable Court to compel Plaintiff to submit to arbitration as outlined by the terms of the Arbitration Agreements signed by Plaintiff's authorized representative an court appointed Guardian, George Alford, on December 6, 2005, January 23, 2006, July 4, 2006, November 20, 2006, May 3, 2007 and July 30, 2007 and to stay further proceedings in this case pending arbitration. As grounds for this Motion, Defendant sets forth the following, to wit:

1.      On November 23, 2005 George Alford was appointed as the Guardian of Emma Giacomo by the Probate Court of Chambers County Alabama. (Exhibit 1: Order granting Letters of Guardianship)

2.      On December 6, 2005, George Alford, as the authorized representative of Emma Giacomo, entered into an arbitration agreement with Defendant Beverly Enterprises-Alabama, Inc. d/b/a Beverly Healthcare-Lanett. (Exhibit 2: Arbitration Agreement of December 6, 2005.)

George Alford, as the authorized representative of Emma Giacomo, renewed that Arbitration Agreement by signing subsequent Arbitration Agreements with Beverly Healthcare-Lanett on January 23, 2006, July 4, 2006, November 20, 2006, May 3, 2007 and July 30, 2007. (Exhibit 3: Arbitration Agreement of January 23, 2006; Exhibit 4: Arbitration Agreement of July 4, 2006; Exhibit 5: Arbitration Agreement of November 20, 2006; Exhibit 6: Arbitration Agreement of May 3, 2007 and Exhibit 7: Arbitration Agreement of July 30, 2007.)

3.    On December 6, 2005, January 23, 2006, July 4, 2006, November 20, 2006, May 3, 2007 and July 30, 2007 George Alford, as the authorized representative of Emma Giacomo, agreed to submit any claims arising out of Emma Giacomo's residency at Beverly Healthcare-Lanett to arbitration through a separate arbitration contract. (Ex. 2, 3, 4, 5, 6 and 7.) These Arbitration Agreements contain a grievance procedure for resolution of any disputes arising out of or in connection with the health care rendered to Emma Giacomo by the Defendant. Any such disputes, "shall be resolved exclusively by binding arbitration . . . and not by a lawsuit or resort to court process." (Ex., 2, 3, 4, 5, 6 and 7.)

4.    Despite the existence of these valid and binding Arbitration Agreements, Plaintiff filed a Complaint against the Defendant Beverly Healthcare-Lanett in the Circuit Court of Chambers County, Alabama, on or about December 4, 2007, alleging negligence and wantonness in the care and treatment of Emma Giacomo at Beverly Healthcare-Lanett. (Exhibit 8: Compl.)

5.    As a result of Plaintiff's breach of the Arbitration Agreements, Defendants file this Motion to Compel Arbitration and Proceedings to enforce said valid and binding contract and to compel Plaintiff to adhere to terms of same.

6.    Emma Giacomo's authorized representative, George Alford, signed binding Arbitration Agreements on Ms. Giacomo's behalf. (Ex. 2, 3, 4, 5, 6 and 7.) These Arbitration

2

Agreements between Beverly Healthcare-Lanett and Ms. Giacomo substantially affected interstate commerce, as evidenced by the following, to wit:  (1) Beverly Enterprises Alabama, Inc. d/b/a Beverly Healthcare-Lanett is a California Corporation; (2) Medicare provides funding for the care and treatment of some of the residents at the Lanett nursing facility; (3) the Lanett nursing facility employs individuals who reside outside the State of Alabama; (3) the Lanett nursing facility provides care for citizens of other states; (4) the pharmaceuticals consumed by Emma Giacomo during her residency were supplied by out of state companies; and, (5) the supplies used in the care and treatment of Ms. Giacomo were purchased from out of state corporations. (Exhibit 9:  Affidavit of L. Dunlap.)

7.    The Arbitration Agreements to which Plaintiff is bound are properly executed and have the necessary effect on interstate commerce so as to invoke the provisions of the Federal Arbitration Act. (Ex. 9.)

8.    Recently, the Alabama Supreme Court held that an identical arbitration agreement was binding. *Carraway v. Beverly Enterprises Alabama Inc.* 2007 WL 2070354 (Ala.).

9.    Additionally, the Alabama Supreme Court has ruled that an arbitration agreement contained within a nursing home admission agreement is enforceable where the nursing home resident's "Fiduciary Party" signed the agreement and the Defendant "demonstrates a nexus with interstate commerce." *Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So. 2d 661, 668 (Ala. 2004) (*quoting Community Care of American of Alabama, Inc. v. Davis*, 850 So. 2d 283, 285 (Ala. 2002)).  In *Briarcliff*, the Court found that the trial court erred in denying a nursing home's motions to compel arbitration in two wrongful death actions where representatives of the nursing home residents signed the admission agreements containing agreements to arbitrate. The Court further held that evidence asserting the defendant nursing home's out of state corporate

3

ownership, care of out of state residents, receipt of supplies from outside the State of Alabama, purchase of pharmaceuticals from outside the State of Alabama, and that the resident was a Medicare patient was sufficient to "conclude that Briarcliff's activities substantially affect[ed] interstate commerce" such that the Federal Arbitration Act preempted any Alabama law and mandated that the claim be resolved by binding arbitration. *Id.* Mr. Alford, acting as Ms. Giacomo's personal representative, entered into an arbitration agreement on behalf of Ms. Giacomo, thereby binding her and those who might bring suit on her behalf to the terms of the agreement. Further, the Defendant in this case has presented the requisite evidence establishing a substantial nexus with interstate commerce. (Ex. 9). As such, the Federal Arbitration Act preempts any Alabama law and mandates that the claims set forth by the Plaintiff in the instant case be resolved by binding arbitration. *See Briarcliff Nursing Home, Inc.*, 894 So. 2d at 668 (*quoting Community Care of America of Alabama, Inc.*, 850 So. 2d at 285).

10.     Defendant requests that all Court proceedings be stayed in this action. In actions involving written arbitration agreements, the Federal Arbitration Act requires that such actions be stayed pending the resolution of arbitration:

> In any suit or proceeding being brought in the Courts of the United States upon an issue referable to arbitration under an agreement in writing for such arbitration, the court in which said suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until the arbitration had been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with arbitration.

9 U.S.C.§ 3. *See also Greentree Financial Corp. of America v. Vinson*, 753 So. 2d 497, 502 (Ala. 1999) (stating that "trial courts are required to stay or dismiss proceedings and to compel arbitration where the parties have entered into a valid contract stating arbitration agreement").

4

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully asks this Honorable Court to issue an Order compelling Plaintiff to arbitrate her claims and causes of action against Defendant and to stay all further proceedings in this case pending resolution of arbitration.

Respectfully submitted:

_____
W. BENJAMIN BROADWATER (BRO150)
ANDREW C. CLAUSEN (CLA044)
Attorneys for defendant Beverly Healthcare
Services d/b/a Beverly Enterprises-Alabama, Inc.

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama  36602
(251) 432-1600
(251) 432-1700 (fax)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel for all parties by depositing a copy of same in the United States mail, properly addressed and first class postage prepaid:

Nick Wooten, Esq.
WOOTEN LAW FIRM, P.C.
Post Office Box 290
Lafayette, Alabama  36862

David J. Hodge, Esq.
PITTMAN, DUTTON, KIRBY & HELLUMS, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama  35203

Done this 7th day of January 2008.

_____
COUNSEL

5

## IN THE PROBATE COURT OF CHAMBERS COUNTY
## STATE OF ALABAMA

| | |
|---|---|
| In Re: The Matter of | § |
| EMMA GIACOMO, | §  Case No. |
| Respondent | § |

### LETTERS OF GUARDIANSHIP

Letters of Guardianship on the estate of EMMA GIACOMO are hereby GRANTED to

George Alford  who has duly qualified and given bond, and said Guardian is hereby authorized to

discharge all of the functions attached to said Guardianship pursuant to Ala. Code §26-2A-108.

_____
Judge of Probate

STATE OF ALABAMA

CHAMBERS COUNTY

I, John Crowder, Judge of Probate in and for Chambers County, Alabama, hereby certify that

the foregoing is a full, true and complete copy of the Letters of Conservatorship on the Estate of

EMMA GIACOMO, as fully and completely as the same appears of record in this office.

Given my hand and seal on this the 23 day of _____, 2005.

_____
Judge of Probate

EXHIBIT
1

## RESIDENT AND FACILITY ARBITRATION AGREEMENT
### (NOT A CONDITION OF ADMISSION – READ CAREFULLY)

This Arbitration Agreement is executed by ~~Beverly Health Care~~ *Lanett* (the "Facility") and _____ ("Resident" or "Resident's Authorized Representative", hereafter collectively referred to as "Resident") in conjunction with an agreement for admission and for the provision of nursing facility services (the "Admission Agreement") by Facility to Resident. The parties to this Arbitration Agreement acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction involving interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement\1, and not by a lawsuit or resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

This agreement to arbitrate includes, but is not limited to, any claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care or safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute, warranty, or any alleged breach, default, negligence, wantonness, fraud, misrepresentation, suppression of fact, or inducement. However, this agreement shall not limit the Resident's right to file a grievance or complaint with the Facility or any appropriate government agency from requesting an inspection from such an agency, or from seeking review under 42 C.F.R. section 431.200 et seq. of a decision to transfer or discharge the Resident.

The parties agree that damages awarded, if any, in an arbitration conducted pursuant to this Arbitration Agreement shall be determined in accordance with the provisions of the state or federal law applicable to a comparable civil action, including any prerequisites to, credit against, or limitations on, such damages. Any award of the arbitrator(s) may be entered as a judgment in any court having jurisdiction. In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective.

It is the intention of the parties to this Arbitration Agreement that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation the agents, employees and servants of the Facility, and all persons whose claim is derived through or on behalf of the Resident, including any parent, spouse, sibling, child, guardian, executor, legal representative, administrator, or heir of the Resident. The parties further intend that this agreement is to survive the lives or existence of the parties hereto.

---

\1 Information about the National Arbitration Forum, including a complete copy of the Code of Procedure, can be obtained from the Forum at 800-474-2371, by fax at 651-604-6778 or toll-free fax at 866-743-4517, or on the internet at http://www.arb-forum.com.
Rev. 05/13/03

**EXHIBIT**
**2**

All claims based in whole or part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident shall be arbitrated in one proceeding. A claim shall be waived and forever barred if it arose and should reasonably have been discovered prior to the date upon which notice of arbitration is given to the Facility or received by the Resident and such claim is not presented in the arbitration proceeding.

**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

The Resident understands that (1) he/she has the right to seek legal counsel concerning this Arbitration Agreement, (2) that execution of this Arbitration Agreement is not a precondition to admission or to the furnishing of services to the Resident by the Facility, and (3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within thirty days of signature. If not rescinded within thirty days, this Arbitration Agreement shall remain in effect for all subsequent stays at the Facility, even if the Resident is discharged from and readmitted to the Facility.

The undersigned certifies that he/she has read this Arbitration Agreement and that it has been fully explained to him/her, that he/she understands its contents, and has received a copy of the provision and that he/she is the Resident, or a person duly authorized by the Resident or otherwise to execute this agreement and accept its terms.

Date: _____

Signature: _____
      (Resident)

Witness: _____

If the resident is unable to consent or sign this provision because of physical disability or mental incompetence or is a minor and an authorized representative is signing this provision, complete the following:

Date: _____

Relationship to Resident: _____

Signature: _____
      (Authorized representative)

Witness: _____

For Facility:

Rev. 05/13/03

Date: _____

Authorized Representative Signature: _____

Print Name and Title: _____

Resident Name: Emily H. Gravens

Res. No. _____

Rev. 03/13/03

## ARBITRATION AGREEMENT INFORMATION

### (NOT A CONDITION OF ADMISSION)

This Arbitration Agreement is executed by <u>BEVERLY HEALTH CARE  LANETT</u>(the facility) and _____.
("Resident or "Resident's Authorized Representative",
hereafter collectively referred to as "Resident") in conjunction with an agreement for admission and for the provision of nursing facility services (the "Admission Agreement"), by Facility to Resident.  The parties to this Arbitration Agreement Acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process.  This agreement shall be governed by an interpreted under the Federal Arbitration Act 9 U.S.C. Section 1-16.
This agreement to arbitrate includes, but is not limited to any claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violation of any right granted to Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care of safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute. Warranty, or an alleged breach, default, negligence, wantonness, fraud misrepresentation, suppressions of fact, or inducement.  However, this agreement shall not limit the Resident's right to file a grievance or complaint with the Facility or any appropriate government agency, or from requesting an inspection from such an agency.

The parties agree that damages awarded, if any, in an arbitration conducted pursuant to this Arbitration Agreement shall be determined in accordance with the provisions of the state or federal law applicable to a comparable civil action, including any prerequisites to, credit against, or limitations on, such damages.  Any award of the arbitrator(s) may be entered as a judgment in any court having jurisdiction.  In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective.

It is the intention of the parties to this Arbitration Agreement that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation the agents, employees and servants of the Facility, and all persons whose claim is derives through or on behalf of the Resident, including any parent. Spouse, sibling, child

EXHIBIT

3

guardian, executor, legal representative, administrator or heir of the Resident. The parties further intend that this agreement is to survive the lives or existence of the parties hereto.

All claims based in whole or part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident shall be arbitrated in one proceeding. A claim shall be waived and forever barred if it arose and should reasonably have been discovered prior to the date upon which notice of arbitration is given to the Facility or received by the Resident and such claim is not presented in the arbitration proceeding.

**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARGITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES,AND THAT BY ENTERING INTO THIS ARBITRARION AGEEWWMENT. THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIOAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

The Resident understands that (1) he/she has the right to seek legal counsel concerning this Arbitration Agreement, (2)_ That Execution of this Arbitration Agreement is not a precondition to admission or to  the furnishing of services to the Resident by the Facility, and (3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within thirty days of signature.  If not rescinded within thirty days, this Arbitration Agreement shall remain in effect for all subsequent stays at the Facility, even if the Resident is discharged from and readmitted to the Facility.

The undersigned certifies that he/she has read this Arbitration Agreement and that it has been fully explained to him/her, that he/she understands its contents, and has received a copy of the provision and that he/she is the Resident, or a person duly authorized by the Resident or otherwise to execute this agreement and accept its terms.

Date:_____

Signature:_____
     (Resident)

Witness:_____

If the resident is unable to consent or sign this provision because of physical disability or mental incompetence or is a minor and this provision is being signed by an authorized representative, complete the following:

**DATE :**_____*1/23/0 6*_____

Relationship to Resident:___*Son*_____

Signature:_____

      Authorized representative)

Witness:_____

For Facility:

Date:_____

Authorized Representative Signature:_____

Print Name and Title_____

### ARBITRATION AGREEMENT INFORMATION

#### (NOT A CONDITION OF ADMISSION)

This Arbitration Agreement is executed by <u>BEVERLY HEALTH CARE  LANETT</u>(the facility) and _____<u>Emma Giacemo</u>_____ .
("Resident or "Resident's Authorized Representative",
hereafter collectively referred to as "Resident") in conjunction with an agreement for admission and for the provision of nursing facility services (the "Admission Agreement"), by Facility to Resident.  The parties to this Arbitration Agreement Acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process.  This agreement shall be governed by an interpreted under the Federal Arbitration Act 9 U.S.C. Section 1-16.

This agreement to arbitrate includes, but is not limited to any claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violation of any right granted to Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care of safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute. Warranty, or an alleged breach, default, negligence, wantonness, fraud misrepresentation, suppressions of fact, or inducement.  However, this agreement shall not limit the Resident's right to file a grievance or complaint with the Facility or any appropriate government agency, or from requesting an inspection from such an agency.

The parties agree that damages awarded, if any, in an arbitration conducted pursuant to this Arbitration Agreement shall be determined in accordance with the provisions of the state or federal law applicable to a comparable civil action, including any prerequisites to, credit against, or limitations on, such damages.  Any award of the arbitrator(s) may be entered as a judgment in any court having jurisdiction.  In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective.

It is the intention of the parties to this Arbitration Agreement that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation the agents, employees and servants of the Facility, and all persons whose claim is derives through or on behalf of the Resident, including any parent. Spouse, sibling, child

EXHIBIT
4

guardian, executor, legal representative, administrator or heir of the Resident. The parties further intend that this agreement is to survive the lives or existence of the parties hereto.

All claims based in whole or part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident shall be arbitrated in one proceeding. A claim shall be waived and forever barred if it arose and should reasonably have been discovered prior to the date upon which notice of arbitration is given to the Facility or received by the Resident and such claim is not presented in the arbitration proceeding.

**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARGITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES,AND THAT BY ENTERING INTO THIS ARBITRARION AGEEWWMENT. THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIOAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

The Resident understands that (1) he/she has the right to seek legal counsel concerning this Arbitration Agreement, (2)_ That Execution of this Arbitration Agreement is not a precondition to admission or to the furnishing of services to the Resident by the Facility, and (3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within thirty days of signature. If not rescinded within thirty days, this Arbitration Agreement shall remain in effect for all subsequent stays at the Facility, even if the Resident is discharged from and readmitted to the Facility.

The undersigned certifies that he/she has read this Arbitration Agreement and that it has been fully explained to him/her, that he/she understands its contents, and has received a copy of the provision and that he/she is the Resident, or a person duly authorized by the Resident or otherwise to execute this agreement and accept its terms.

Date:_____

Signature:_____
     (Resident)

Witness:_____

If the resident is unable to consent or sign this provision because of physical disability or mental incompetence or is a minor and this provision is being signed by an authorized representative, complete the following:

DATE :_____7/4/06_____

Relationship to Resident:_____Son_____

Signature: _____
                  Authorized representative)

Witness: _____

For Facility:
Date: _____7/4/06_____

Authorized Representative Signature: _____

Print Name and Title _Rosie Ruddock   Director of Sales and marketing_

## ARBRITRATION AGREEMENT INFORMATION

### (NOT A CONDITION OF ADMISSION)

This Arbitration Agreement is executed by <u>BEVERLY HEALTH CARE  LANETT</u>(the facility) and _Emma Giacomis_ .
("Resident or "Resident's Authorized Representative",
hereafter collectively referred to as "Resident") in conjunction with an agreement for admission and for the provision of nursing facility services (the "Admission Agreement"), by Facility to Resident.  The parties to this Arbitration Agreement Acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process.  This agreement shall be governed by an interpreted under the Federal Arbitration Act 9 U.S.C. Section 1-16.

This agreement to arbitrate includes, but is not limited to any claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violation of any right granted to Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care of safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute. Warranty, or an alleged breach, default, negligence, wantonness, fraud misrepresentation, suppressions of fact, or inducement.  However, this agreement shall not limit the Resident's right to file a grievance or complaint with the Facility or any appropriate government agency, or from requesting an inspection from such an agency.

The parties agree that damages awarded, if any, in an arbitration conducted pursuant to this Arbitration Agreement shall be determined in accordance with the provisions of the state or federal law applicable to a comparable civil action, including any prerequisites to, credit against, or limitations on, such damages.  Any award of the arbitrator(s) may be entered as a judgment in any court having jurisdiction.  In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective.

It is the intention of the parties to this Arbitration Agreement that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation the agents, employees and servants of the Facility, and all persons whose claim is derives through or on behalf of the Resident, including any parent. Spouse, sibling, child

EXHIBIT
5
tabbies'

guardian, executor, legal representative, administrator or heir of the Resident. The parties further intend that this agreement is to survive the lives or existence of the parties hereto.

All claims based in whole or part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident shall be arbitrated in one proceeding. A claim shall be waived and forever barred if it arose and should reasonably have been discovered prior to the date upon which notice of arbitration is given to the Facility or received by the Resident and such claim is not presented in the arbitration proceeding.

**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARGITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES,AND THAT BY ENTERING INTO THIS ARBITRARION AGEEWWMENT. THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIOAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

The Resident understands that (1) he/she has the right to seek legal counsel concerning this Arbitration Agreement, (2)_ That Execution of this Arbitration Agreement is not a precondition to admission or to the furnishing of services to the Resident by the Facility, and (3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within thirty days of signature. If not rescinded within thirty days, this Arbitration Agreement shall remain in effect for all subsequent stays at the Facility, even if the Resident is discharged from and readmitted to the Facility.

The undersigned certifies that he/she has read this Arbitration Agreement and that it has been fully explained to him/her, that he/she understands its contents, and has received a copy of the provision and that he/she is the Resident, or a person duly authorized by the Resident or otherwise to execute this agreement and accept its terms.

Date:_____

Signature:_____
    (Resident)

Witness:_____

If the resident is unable to consent or sign this provision because of physical disability or mental incompetence or is a minor and this provision is being signed by an authorized representative, complete the following:

**DATE:** _____ 11·20·06 _____

    Relationship to Resident:_____ Son _____

Signature: X _____

        Authorized representative)

Witness: _____

For Facility:

Date: _____11·20·04_____

Authorized Representative Signature: _____

Print Name and Title___ Rosie Ruddock___ Sales and marketing director

## ARBITRATION AGREEMENT INFORMATION
### (NOT A CONDITION OF ADMISSION)

This Arbitration Agreement is executed by <u>GOLDEN LIVING CENTER LANETT</u> ( The facility) and _George Alford / Emma Gec_(Resident or Resident's Authorized Representative), hereafter collectively referred to as "Resident" in conjunction with an agreement for admission and for the provision of nursing facility services (the "Admission Agreement"), by Facility Resident. The parties to this Arbitration Agreement Acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by Facility and Resident that nay and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at the place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process. This agreement shall be governed by an interpreted under the Federal Arbitration Act 9 U.S.C. Section 1-16.

This agreement to Arbitrate includes, but is not limited to any claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violation of any right granted to resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care of safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute. Warranty, or an alleged breach, default, negligence, wantonness, fraud misrepresentation, suppressions of fact, or inducement. However, this agreement shall not limit the Resident's right to file a grievance or complaint with the Facility or any appropriate government agency, or from requesting an inspection from such an agency.

The parties agree that damages awarded, if any, in an arbitration conducted pursuant to this Arbitration Agreement shall be determined in accordance with the provisions of the state or federal law applicable to a comparable civil action, including any prerequisites to credit against, or limitations on, such damages. Any award of the arbitrator(s) may be entered as a judgment in any court having jurisdiction. In the even a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective.

It is the intention of the parties to this Arbitration Agreement that it shall inure to the benefit of any bind the parties, their successors, and assigns, including without limitation the agents, employees and servants of the Facility, and all persons whose claim is derives through or on behalf of the Resident, including any part, spouse, sibling, child, guardian, executor, legal representative, administrator or heir of the


EXHIBIT
6

Resident. The parties further intend that this agreement is to survive the lives or existence of the parties hereto.

All claims based in whole or part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident shall be arbitrated in one proceeding. A claim shall be waived and forever barred if it arose and should reasonably have been discovered prior to the date upon which notice of arbitration is given to the Facility or received by the Resident and such claim is not presented in the arbitration proceeding.

**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORECED BY THE PARTIES, AND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURTOF LAW BEFORE A JUGE AND JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

The Resident understands that (1) he/she has the right to seek legal counsel concerning this Arbitration Agreement, (2) That Execution of this Arbitration Agreement is not a precondition to admission or to the furnishing of services to the Resident by the Facility, and (3) the Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within thirty days of signature. If not rescinded within thirty days, this Arbitration Agreement shall remain in effect for all subsequent stays at the Facility, even if the Resident is discharged from and readmitted to the Facility.

The undersigned certifies that he/she has read this Arbitration Agreement and that it has been fully explained to him/her, that he/she understands its contents, and has received a copy of the provision and that he/she is the Resident, or a person duly authorized by the Resident or otherwise to execute this agreement and accept its terms.

Date: _____

Signature: _____
        (Resident)

Witness: _____

If the resident is unable to consent or sign this provision because of physical disability or mental incompetence or is a minor and this provision is being singed by an authorized representative, complete the following:

Date: _____

Relation to Resident: _____

Signature: _____
            (Authorized Representative)

Witness: _____

For Facility:

Date: _____ 5-3-07 _____

Authorized Representative Signature: _____

Print Name and Title: _____ Rosie Ruddock _____ Sales & marketing Director

## RESIDENT AND FACILITY ARBITRATION AGREEMENT
## (NOT A CONDITION OF ADMISSION – READ CAREFULLY)

This Arbitration Agreement is executed by _____Golden Living Center Lanett_____ (the "Facility") and _____George Alford_____ ("Resident" or "Resident's Authorized Representative", hereafter collectively referred to as "Resident") in conjunction with an agreement for admission and for the provision of nursing facility services (the "Admission Agreement") by Facility to Resident. The parties to this Arbitration Agreement acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement[^1], and not by a lawsuit or resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

This agreement to arbitrate includes, but is not limited to, any claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care or safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute, warranty, or any alleged breach, default, negligence, wantonness, fraud, misrepresentation, suppression of fact, or inducement. However, this agreement shall not limit the Resident's right to file a grievance or complaint with the Facility or any appropriate government agency, or from requesting an inspection from such an agency.

The parties agree that damages awarded, if any, in an arbitration conducted pursuant to this Arbitration Agreement shall be determined in accordance with the provisions of the state or federal law applicable to a comparable civil action, including any prerequisites to, credit against, or limitations on, such damages. Any award of the arbitrator(s) may be entered as a judgment in any court having jurisdiction. In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective.

It is the intention of the parties to this Arbitration Agreement that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation

[^1]: Information about the National Arbitration Forum, including a complete copy of the Code of Procedure, can be obtained from the Forum at 800-474-2371, by fax at 651-604-6778 or toll-free fax at 866-743-4517, or on the internet at http://www.arb-forum.com.

**EXHIBIT**
**7**

the agents, employees and servants of the Facility, and all persons whose claim is derived through or on behalf of the Resident, including any parent, spouse, sibling, child, guardian, executor, legal representative, administrator, or heir of the Resident. The parties further intend that this agreement is to survive the lives or existence of the parties hereto.

All claims based in whole or part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident shall be arbitrated in one proceeding. A claim shall be waived and forever barred if it arose and should reasonably have been discovered prior to the date upon which notice of arbitration is given to the Facility or received by the Resident and such claim is not presented in the arbitration proceeding.

**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THAT BY ENTERING INT0 THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

The Resident understands that (1) he/she has the right to seek legal counsel concerning this Arbitration Agreement, (2) that execution of this Arbitration Agreement is not a precondition to admission or to the furnishing of services to the Resident by the Facility, and (3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within thirty days of signature. If not rescinded within thirty days, this Arbitration Agreement shall remain in effect for all subsequent stays at the Facility, even if the Resident is discharged from and readmitted to the Facility.

The undersigned certifies that he/she has read this Arbitration Agreement and that it has been fully explained to him/her, that he/she understands its contents, and has received a copy of the provision and that he/she is the Resident, or a person duly authorized by the Resident or otherwise to execute this agreement and accept its terms.

Date: _____7 | 30 | 07_____

Signature: X _____
                    (Resident)

Witness: _____

If the resident is unable to consent or sign this provision because of physical disability or mental incompetence or is a minor and this provision is being signed by an authorized representative, complete the following:

Date: _____ 7/30/07 _____

Relationship to Resident: _____ Responsible party _____ Son

Signature: _____ X _____ _____

    (Authorized representative)

Witness: _____ Vicky Oliver _____

 For Facility:

Date: _____ 7/30/07 _____

Authorized Representative Signature: _____ Vicky Oliver _____

Print Name and Title: _____ Vicky Oliver    Sales & Market Director

ELECTRONICALLY FILED
12/4/2007 3:56 PM
CV-2007-900032.00
CIRCUIT COURT OF
CHAMBERS COUNTY, ALABAMA
CHARLES STORY, CLERK

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

CIVIL ACTION NUMBER: _____

EMMA GIACOMO, by and through her son and next friend, GEORGE ALFORD,

    Plaintiff,

vs.

BEVERLY HEALTHCARE SERVICES d/b/a BEVERLY ENTERPRISES-ALABAMA, INC. , a business entity; **No. 1,** whether singular or plural, that entity or those entities, that individual or those individuals who or which were involved in the occurrences made the basis of this lawsuit; **No. 2,** whether singular or plural, that entity or those entities, that individual or those individuals who or which negligently, wantonly, and/or willfully failed to properly care for the plaintiff on the occasions made basis of this lawsuit; **No. 3,** whether singular or plural, that entity or those entities, that individual or those individuals who or which was responsible for the supervision and training of employees of Beverly Healthcare, at the time of the occurrences made the basis of plaintiff's complaint; **No. 4,** whether singular or plural, that entity or those entities, that individual or those individuals who or which provided any insurance coverage, of whatever kind or character, for any of the named defendants or fictitious party defendants listed or named herein; **No. 5,** whether singular or plural, that entity or those entities, that individual or those individuals who or which was the employer, principal and/or supervisor of the employee that negligently, wantonly, and/or willfully failed to properly care for the plaintiff on the occasions made basis of this lawsuit; **No. 6,** whether singular or plural, that entity or those entities, that individual or those individuals that negligently trained, supervised or hired the employee involved in this lawsuit; **No. 7,** whether singular or plural, that entity or those entities, that individual or those individuals, whose outrageous conduct caused the injuries to the plaintiff on the occasions made the basis of this lawsuit; **No. 8,** whether singular or plural, that entity or those entities, that individual or those individuals that failed to properly care for the plaintiff on the occasions made basis of this lawsuit; **No. 9,** whether singular or plural, that entity or those entities, that individual or those individuals which undertook to provide security services on the occasions made the basis of this lawsuit; **No. 10,** whether singular or plural, that entity or those entities other than those entities described above, which is the successor in interest of any of those entities described above; **No. 11,** whether singular or plural, that entity or those entities other than those entities described above, which was the predecessor corporation of any of the entities described above. **No. 12,** whether singular or plural, that entity or those entities, that individual or those individuals other than those entities described above, whose outrageous, intentional, reckless, or other wrongful conduct contributed to cause the occurrences made the basis of this lawsuit. **No. 13,** whether singular or plural, that entity or those entities, that individual or those individuals which negligently, willfully, and/or wantonly failed to remedy and/or prevent the negligent, willful, and/or wanton conduct of the Defendants which caused the injuries to plaintiff on the occasions made the basis of this lawsuit. Plaintiff avers that the identities of the fictitious party defendants herein are otherwise unknown to plaintiff at this time or, if their names are known to

1



EXHIBIT
8

plaintiff, their identities as proper party defendants are not known to plaintiff at this time, and their true names will be substituted by amendment when ascertained,

Defendants.

## COMPLAINT

1.      The plaintiff, EMMA GIACOMO, is an individual over the age of nineteen (19) years and is a resident citizen of Chambers County, Alabama.

2.      The defendant, BEVERLY HEALTHCARE SERVICES d/b/a BEVERLY ENTERPRISES-ALABAMA, INC. , is a corporation with its principal place of business in Chambers County, Alabama.

3.      Through December 3, 2007 EMMA GIACOMO, was a resident at Beverly Healthcare Services, Inc. in Lanett, Alabama.  During the time that the plaintiff was a resident of the facility, EMMA GIACOMO was under the care of BEVERLY HEALTHCARE SERVICES d/b/a BEVERLY ENTERPRISES-ALABAMA, INC., and one or more of the fictitious party defendants listed and described in the caption hereinabove who undertook to and did provide medical services to EMMA GIACOMO.

4.      During said period of time, and at said place, the Defendants, BEVERLY HEALTHCARE SERVICES d/b/a BEVERLY ENTERPRISES-ALABAMA, INC., and one or more of the fictitious party defendants listed and described in the caption hereinabove, negligently and wantonly provided medical services to EMMA GIACOMO and negligently and wantonly breached acceptable standards of practice in providing such medical services.

2

5.    Specifically, while under defendants' care, EMMA GIACOMO was caused to develop a large decubitus ulcer to her sacral area and to become dehydrated and to develop a severe kidney infection. Said defendants negligently or wantonly failed to diagnose, treat, monitor and request physician intervention for EMMA GIACOMO.

6.    BEVERLY HEALTHCARE SERVICES d/b/a BEVERLY ENTERPRISES-ALABAMA, INC. is liable under the doctrine of respondeat superior for the negligence of its nurses, agents, and/or employees who failed to identify, monitor, and properly treat Emma Giacomo's condition.

7.    EMMA GIACOMO, by and through her son and next friend, George Alford, alleges that the conduct of each of the named defendants and also the above-described defendants 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13, combined and concurred, and proximately caused the injuries complained of in this case.

12.    The aforesaid wrongful, negligent and/or wanton conduct of the Defendants, combined and concurred, proximately causing EMMA GIACOMO to be injured and damaged as follows:

(a)    Plaintiff sustained a large decubius ulcer to the sacral area.

(b)    Plaintiff was caused to become dehydrated.

(c)    Plaintiff was caused to develop a severe infection causing kidney failure.

(d)    Plaintiff was caused and will be caused in the future to expend large sums of money for her medical care and treatment.

(c)    Plaintiff was permanently injured.

(d)    Plaintiff suffered and continues to suffer from extreme pain and emotional disstress.

3

WHEREFORE, plaintiff demands judgment against each of the defendants, jointly and severally, including the fictitious party defendants, to be determined by a jury, together with interest from the date of injury, and the costs of this proceeding. Further, plaintiff requests that the jury selected to hear this case render a verdict for the plaintiff and against each defendant, and that it award punitive damages to plaintiff in an amount which will adequately reflect the enormity of the defendants' wrongful acts and which will effectively prevent other similar wrongful acts.

Respectfully submitted,

/S/ Nick Wooten
Nick Wooten (Woo084)
David J. Hodge (HOD016)
Attorney for Plaintiff

OF COUNSEL:

WOOTEN LAW FIRM, P.C.
P.O. Box 290
Lafayette, Al. 36862
(334) 864 2132
(334) 864 2133

PITTMAN, DUTTON, KIRBY & HELLUMS, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203
(205) 322-8880
(205) 326-2711 facsimile

4

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a struck jury for the trial of this case.


/s/ Nick Wooten
Of Counsel for Plaintiff


## REQUEST FOR SERVICE

Pursuant to Alabama Rules of Civil Procedure, 4.1 and 4.2, plaintiff requests that

the foregoing Summons & Complaint be served by certified mail.


/s/ Nick Wooten
Of Counsel for Plaintiff


PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:

BEVERLY ENTERPRISES-ALABAMA, INC.
c/o CSC LAWYERS INCORPORATING SVC INC
150 S. Perry St.
Montgomery, AL 36104

Beverly Healthcare Services Lanett
702 S 13th Street
Lanett, AL  36863

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **EMMA GIACOMO** | * |
| **by and through her son and next friend,** | * |
| **GEORGE ALFORD,** | * |
| | * |
| **Plaintiff,** | *    NO. _____ |
| | * |
| **vs.** | * |
| | * |
| **BEVERLY HEALTHCARE SERVICES** | * |
| **d/b/a BEVERLY ENTERPRISES-** | * |
| **ALABAMA, INC., et al.,** | * |
| | * |
| **Defendants.** | |

**AFFIDAVIT OF LESLIE DUNLAP**

STATE OF ALABAMA

COUNTY OF CHAMBERS

COMES NOW Leslie Dunlap, who is over the age of majority and, testifies to the following:

    1. My name is Leslie Dunlap and I am over the age of nineteen and have personal knowledge of all averments set forth in this affidavit.

    2.     I was employed as the facility business office coordinator of Beverly Enterprises-Alabama, Inc. d/b/a Beverly Healthcare-Lanett, (incorrectly named Beverly Healthcare Services d/b/a Beverly Enterprises-Alabama, Inc.) during Ms. Emma Giacomo's residency at that facility.

    3.     During the period of Ms. Giacomo's residency at Beverly Healthcare-Lanett, Medicare paid the cost of care and treatment rendered to some facility residents.

Received Time Jan. 4.   9:46AM

EXHIBIT
_9_
tabbies

4.      During the period of Ms. Giacomo's residency at Beverly Healthcare-Lanett, the facility provided treatment to out-of-state patients.

5.      During the period of Ms. Giacomo's residency at Beverly Healthcare-Lanett, the facility employed individuals who resided outside the State of Alabama.

6.      During the period of her residency at Beverly Healthcare-Lanett, Emma Giacomo consumed pharmaceuticals purchased from out-of-state companies.

7.      During the period of her residency at Beverly Healthcare-Lanett, the supplies used in the care and treatment of Emma Giacomo were purchased from out-of-state entities.

6.      The care and treatment Beverly Healthcare-Lanett rendered Emma Giacomo pursuant to her residency agreement could not have been accomplished without the money, employees, supplies, or pharmaceuticals from the out of state entities referenced above.

FURTHER AFFIANT SAITH NAUGHT.

_Leslie Dunlap_
LESLIE  DUNLAP

SWORN TO and SUBSCRIBED before me on this the 3rd day of ~~December, 2007~~ January 2008.

NOTARY PUBLIC

My Commission Expires: _____

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Sept 26, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

2

Received Time Jan. 4. 9:46AM